Defendant-appellant, Laura M. Smith, appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, (1) granting the parties a divorce, and (2) naming defendant the residential parent and legal custodian of the parties' minor child, Taylor, but naming plaintiff-appellee, Jeffrey S. Smith, the "school placement parent." Plaintiff-appellee, Jeffrey S. Smith, cross-appeals.
The parties were married on August 29, 1987. One child, Taylor, was born as issue of the marriage on July 1, 1991. Plaintiff filed a complaint for divorce, and defendant counter-claimed for divorce.
As part of the divorce proceedings before the trial court, plaintiff requested and submitted a shared parenting plan, while defendant requested that she be named the residential parent and legal custodian of the parties' minor child. In granting the divorce, the trial court found shared parenting was not in the child's best interest because the parties were unable to cooperatively communicate regarding Taylor. Instead, the court designated defendant the residential parent and legal custodian of the child, but designated plaintiff the "school placement parent." Explaining the rationale for the decision, the court noted that defendant worked from 7:00 a.m. until 4:00 p.m. To get to school before defendant went to work, Taylor would have to wake as early as 5:30 a.m. By contrast, if plaintiff served as the "school placement parent," Taylor could sleep until 7:00 to 7:30 a.m. and walk less than a block to school. Apparently recognizing the arrangement was unusual, the court noted that "[s]uch a determination does not divest Defendant of the right to make decisions on the child's behalf. As the residential parent and legal custodian, Defendant retains, care, custody, and control of Taylor."
Defendant appeals, assigning a single error:
THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED REVERSIBLE ERROR PREJUDICIAL TO THE RIGHTS OF THE APPELLANT WHEN IT ACTED CONTRARY TO OHIO LAW BY DESIGNATING THE APPELLEE AS THE "SCHOOL PLACEMENTPARENT" FOR THE PARTIES' MINOR CHILD, WHERE THERE WAS NO SHARED PARENTING PLAN, AND THE APPELLANT WAS DESIGNATED AS THE RESIDENTIAL PARENT AND LEGAL CUSTODIAN FOR THE PARTIES' CHILD.
Plaintiff cross-appeals, assigning the following errors:
I. A TRIAL COURT COMMITS PREJUDICIAL ERROR AND VIOLATES THE PARTIES' CONSTITUTIONAL RIGHTS WHEN IT REFUSES TO ALLOW EXAMINATION OF A GUARDIAN AD LITEM BY THE PARTIES AT TRIAL AND ADMITS HIS REPORT INTO EVIDENCE AND RELIES HEAVILY ON THAT REPORT IN REACHING ITS DECISION ON CUSTODY AND PARENTAL RIGHTS.
II. A TRIAL COURT ABUSE[S] ITS DISCRETION WHEN IT DENIES A SHARED PARENTING PLAN BASED UPON THE PARTIES INABILITY TO MAKE JOINT DECISION[S] FOR THEIR CHILD WHEN THERE IS NO SUBSTANTIAL, COMPETENT, CREDIBLE EVIDENCE TO SUPPORT SUCH AN ORDER.
III. A TRIAL COURT COMMITS PREJUDICIAL ERROR WHEN IN DETERMINING CHILD SUPPORT IT FAILS TO TAKE INTO CONSIDERATION THE DIFFERENCE IN HOUSING COSTS AND THE EXPENSES EACH PARTY INCURS IN PROVIDING CARE FOR THE CHILD.
IV. ABSENT SUBSTANTIAL, COMPETENT CREDIBLE EVIDENCE, IT IS PREJUDICIAL ERROR FOR A TRIAL COURT TO RESTRICT THE PARTIES ABILITY TO BE AWAY FROM THEIR CHILDREN FOR LONGER THAN TWO HOURS.
V. A CHILD SUPPORT REDUCTION BASED UPON A NEW PARENTING SCHEDULE SHOULD BE MADE RETROACTIVE TO THE DATE OF THE NEW PARENTING SCHEDULE.
VI. WHEN ONE PARTY HAS SUBSTANTIALLY ALL OF THE CONTENTS AND FURNISHINGS OF THE MARITAL HOME, THE TRIAL COURT COMMITS PREJUDICIAL ERROR IN ALLOWING EACH PARTY TO KEEP THE PROPERTY IN THEIR POSSESSION THEREBY FAILING TO ACHIEVE A FAIR AND EQUITABLE DISTRIBUTION OF THE PERSONAL PROPERTY.
VII. A TRIAL COURT COMMITS PREJUDICIAL ERROR WHEN IT FAILS TO AWARD THE INCOME TAX DEDUCTION TO THE PARTY THAT WOULD RECEIVE A NET TAX SAVINGS.
VIII. THERE WAS A MATHEMATICAL ERROR MADE IN CALCULATING PLAINTIFF'S EQUITY IN THE MARITAL HOME BECAUSE IT FAILED TO CONSIDER THAT PLAINTIFF PAID $1,900 FOR THE DOWNPAYMENT FROM HIS PENSION THAT HE HAD PRIOR TO THE MARRIAGE.
Defendant's single assignment of error asserts that designation of a "school placement parent" is permitted only when the trial court has adopted a shared parenting plan. Because the court did not adopt a shared parenting plan for Taylor, defendant contends the trial court erred in attempting to engraft that concept here.
Plaintiff responds by noting R.C. 3109.04(A)(1), which states:
 [T]he court, in a manner consistent with the best interest of the children, shall allocate the parental rights and responsibilities for the care of the children primarily to one of the parents, designate that parent as the residential parent and the legal custodian of the child, and divide between the parents the other rights and responsibilities for the care of the children, including, but not limited to, the responsibility to provide support for the children and the right of the parent who is not the residential parent to have continuing contact with the children.
Plaintiff contends the statute's explicit language gives the trial court the authority to divide the "other rights and responsibilities," including the right to determine which school the child will attend.
R.C. 3109.04 indicates two ways to allocate parental rights and responsibilities. The trial court may allocate the parental rights and responsibilities for the care of the child primarily to one of the parents, name that parent the residential and legal custodian of the child, and divide between the parents the other rights and responsibilities, such as support for the child and continuing contact with the child for the non-residential parent. Alternatively, if in the child's best interest, the court may approve a submitted shared parenting plan and allocate parental rights and responsibilities to either parent under the plan.
Under R.C. 3109.04, as amended, if no shared parenting agreement exists, the parent who is primarily allocated the parental rights and responsibilities for the care of the child and is designated the residential and legal custodian, and has "custody of the child":
 A parent who primarily is allocated the parental rights and responsibilities for the care of a child and who is designated as the residential parent and legal custodian of the child under an order that is issued pursuant to this section on or after April 11, 1991, and that does not provide for shared parenting has "custody of the child" and "care, custody, and control of the child" under the order, and is the "residential parent," the "residential parent and legal custodian," or the "custodial parent" of the child under the order. R.C. 3109.04(K)(2).
The custodial parent has legal and physical control of the minor child. See Braatz v. Braatz (1999), 85 Ohio St.3d 40 (noting that "`[c]ustody' resides in the party or parties who have the right to ultimate legal and physical control of a child"), citing In reGibson (1991), 61 Ohio St.3d 168, 171 (stating that "the legal authority to make fundamental decisions about the child's welfare remains with the custodial party"); see, also, Majnaric v.Majnaric (1975), 46 Ohio App.2d 157, citing Selby v. Selby, (1952), 69 Ohio Law Abs. 257 (noting that "[c]ustody, as it is used in the divorce and alimony statutes, includes within its meaning every element of provision for the physical, moral and mental well-being of the children and implies that the person having custody has the immediate personal care and control of the children").
The custodial parent may choose the school that the minor child attends. See Evans v. Brown (1985), 23 Ohio App.3d 97; see, also, In re Landis (1982), 5 Ohio App.3d 22. Because the law recognizes school placement as a custodial right, it cannot be divided. See Gallagher v. Gallagher (Oct. 30, 1973), Franklin App. No. 73AP-186, unreported (1973 Opinions 2871). The trial court thus erred in naming defendant residential parent and legal custodian of the parties' minor child and simultaneously naming plaintiff the "school placement parent." Both parents can be allocated custodial rights only under a shared parenting arrangement. See McKinniss v. McKinniss (Aug. 25, 1987), Franklin App. No. 86AP-1096, unreported (1987 Opinions 1778) (holding that in order to grant both parents custodial rights, the court must award joint custody, similar to today's shared parenting).
Plaintiff nonetheless contends that case law pre-dating the amendments to R.C. 3109.04 is not instructive, given the amendments to that statute. Despite the amendments to R.C.3109.04, 3109.04(A)(1) continues to require that, absent a shared parenting plan, the trial court allocate the parental rights and responsibilities for the care of the child primarily to one parent, who is to be designated the residential parent or legal custodian. Indeed, the Supreme Court noted in Braatz that although the General Assembly overhauled R.C. 3109.04 to include the filing of shared parenting plans and to change the term "custody and control" to "parental rights and responsibilities," the reasoning of its pre-amendment decision in Appleby v. Appleby (1986),24 Ohio St.3d 39 continues to apply.
Similarly, the amendments to R.C. 3109.04 do not disclose any reason pre-amendment case law which recognizes that custodial rights cannot be divided, should not apply. The mere change in terminology from "custody and control" to "parental rights and responsibilities" does not in itself suggest the prior case law is inapplicable. Similarly, the addition of authority for the trial court to grant shared parenting plans only confirms that the other alternative set forth in R.C. 3109.04(A)(1) continues to provide that custody will be granted to one parent or the other, with non-custodial parental rights and responsibilities being allocated as appropriate.
Given the foregoing, we sustain defendant's single assignment of error. Because, however, we are unable to discern from the trial court's opinion the significance the trial court attached to the school placement issue, we are unable to ascertain whether that issue may be substantial enough to cause the trial court to reexamine which party should be the custodial parent. Accordingly, we remand this matter to the trial court to determine who will serve as Taylor's custodial parent in light of this court's ruling that the school placement issue may not be separated from the bundle of custody rights attaching to the residential and custodial parent.
In his first assignment of error on cross-appeal, plaintiff contends the trial court erred in not allowing cross-examination of the guardian ad litem appointed during the course of the proceeding to protect the interests of the parties' minor child. Asserting that the trial court relied almost exclusively on the guardian ad litem's report in its decision not to adopt a shared parenting plan, plaintiff contends the trial court should have allowed him to cross-examine the guardian adlitem. His second assignment of error on cross-appeal asserts the trial court's refusal to award shared parenting is not supported by competent, credible evidence. Because the two assigned errors are interrelated, we address them jointly.
"R.C. 3109.04(C) permits a trial court to appoint an investigator in a child custody proceeding to conduct `* * * an investigation * * * as to the character, family relations, past conduct, earning ability, and financial worth of each parent * * *' and to report to the court on its findings. Where a court requests such an investigation and report' * * * the investigator shall be subject to cross-examination by either parent concerning the contents of the report.'" Crosby v. Crosby (June 15, 1993), Franklin App. No. 92AP-1455, unreported (1993 Opinions 2399, 2407). Where the guardian ad litem functions both as advocate for the child and investigator for the court under R.C. 3109.04(C), the parties are entitled to cross-examine the guardian ad litem
regarding a submitted report. Id.
Here, the guardian ad litem assumed both roles. The guardian ad litem not only cross-examined the parties' witnesses during the trial, but the guardian ad litem also interviewed the parties, as well as one of Taylor's teachers, prior to trial and submitted a report to the court after the conclusion of the trial with suggestions regarding custody. Although counsel for plaintiff requested the opportunity to cross-examine the guardian ad litem,
the trial court refused because "the guardian is here not only as a guardian but attorney for the child." Given the language of R.C.3109.04 and this court's opinion in Crosby, the trial court should have allowed the guardian ad litem to be cross-examined. Nonetheless, the record does not disclose prejudice to plaintiff.
Specifically, the trial court considered the guardian adlitem's report as only one of several factors in rejecting plaintiff's proposed shared parenting plan. As the court explained, "[t]he most telling evidence for the Court was the testimony of the Plaintiff's sister, Tracy Edwards. It appears to the Court that the parties might have been capable of forging a shared parenting plan if left alone by Mrs. Edwards and her husband." The trial court further observed that the parties do not have the ability to communicate and make joint decisions regarding Taylor, an observation independent of the guardian ad litem's
report. In addition, defendant testified she did not think shared parenting would ever work, noting that communications between her and plaintiff were strained due to his family's influence. Indeed, the guardian ad litem's report itself in large part is based on the guardian's observations at trial. Given that the trial court also gave counsel an opportunity to submit closing arguments which included objections to the guardian's report, we cannot find prejudice on this record in the trial court's refusal to permit cross-examination of the guardian ad litem. See Shoff v. Shoff
(June 30, 1998), Franklin App. No. 97APF10-1377, unreported (1998 Opinions 2390).
Nor did the trial court abuse its discretion in rejecting a shared parenting plan. In making a determination regarding the custody of a child of divorcing parents, the best interest of the child is the sole consideration. Crosby, supra, citing Charles v. Charles (1985), 23 Ohio App.3d 109, 110. To determine the best interest of the child, the trial court is to consider all relevant factors including, but not limited to those set forth in R.C. 3109.04(F)(1). The record shows that the trial court took into consideration the factors enumerated in R.C.3109.04(F)(1) and set forth its findings and conclusions. Noted above, those reflect valid reasons for denying a shared parenting plan. Moreover, the record shows a substantial amount of competent, credible evidence supporting the trial court's reasons for rejecting such a plan, including the parties' testimony and the testimony of plaintiff's sister.
Accordingly, plaintiff's first and second cross-assignments of error are overruled.
Plaintiff's third assignment of error on cross-appeal contends the trial court abused its discretion in failing to consider the difference in housing costs for plaintiff and defendant in calculating child support.
Under R.C. 3113.215(B)(1), "a calculation of the amount of an obligor's child support obligation must be made `in accordance with' the basic child support schedule set forth in R.C. 3113.215(D), the applicable worksheet in R.C. 3113.215(E) or (F), and other requirements of the law." Marker v. Grimm (1992),65 Ohio St.3d 139, 141. The statute allows for deviation only where the amount "would be unjust or inappropriate and would not be in the best interest of the child." R.C. 3113.215(B)(1)(a). In determining whether the amount is unjust, the court must consider certain factors and criteria listed in R.C. 3113.215(B)(3). "A trial court has broad discretion in determining whether to deviate from the child support guidelines, and absent an abuse of discretion, this determination will not be disturbed on appeal."Bowman v. Bowman (Nov. 21, 1996), Franklin App. No. 96APF02-229, unreported (1996 Opinions 4479, 4494) (quoting Bishop v. Bishop
(Oct. 9, 1995), Clermont App. No. CA95-02 008, unreported, overruled on other grounds, Carnahan v. Carnahan (1997),118 Ohio App.3d 393). In setting the amount payable as child support, the overriding concern is the best interest of the child. Marker,supra.
The trial court determined that plaintiff earned $27,238 annually, and defendant earned $19,240 annually. Pursuant to the child support guidelines, plaintiff would pay $360.25 per month, as calculated by the worksheet. The trial court concluded that a downward deviation to $250 per month was appropriate due to plaintiff's extended time with Taylor, but noted that support remained appropriate because defendant, as residential parent, remained primarily responsible for meeting Taylor's needs.
R.C. 3113.215 does not require an adjustment for difference in housing costs, unless the child support award would be unjust, inappropriate, or would not be in the best interests of the child. "A party rebutting the basic child support guideline amount has the burden of providing evidence which demonstrates that the calculated award is unjust, inappropriate or would not be in the best interest of the child." Bowman, supra, quoting Schultzv. Schultz (May 2, 1996), Franklin App. No. 95APF10-1387, unreported (1996 Opinions 1687, 1692). Plaintiff has not presented any evidence that the difference in housing costs rendered the calculation unjust. Given that the trial court followed the mandates of R.C. 3313.215(B)(1), deviated downward, and recognized plaintiff's earning to be almost $8,000 annually more than defendant's, the trial court did not abuse its discretion. Accordingly, plaintiff's third cross-assignment of error is overruled.
Plaintiff's fourth cross-assignment of error challenges a provision of the trial court's judgment entry which basically provides that if, while Taylor is in their respective care, either parent will be away from Taylor for two hours or more, the other parent must be given the opportunity to care for the child. Plaintiff argues the provision unduly restricts the parties' rights and is unwarranted.
The trial court noted that Taylor's greatest concern was being able to spend significant time with each of his parents. The court also pointed out that Taylor's bond with plaintiff's extended family was strong, cautioning that plaintiff's family must respect the relationship between Taylor and defendant. Having observed that the influence of plaintiff's sister over plaintiff was a large factor in the breakdown of cooperation between plaintiff and defendant, the trial court thus was concerned about the influence of plaintiff's sister on the relationship between Taylor and defendant. To accommodate that concern, the trial court, through the challenged provision, apparently was attempting to maximize Taylor's time with his parents while at the same time avoiding plaintiff's delegating that care to a third party, and in particular to plaintiff's sister.
While the trial court's provision is a bit restrictive, given the trial court's concerns, all supported by the record, the trial court did not abuse its discretion. The trial court's provision is reasonably designed to accomplish its intended purpose. Should the parties find at some later time that the provision is unnecessary, they may approach the court with that information and seek appropriate redress. Plaintiff's fourth assignment of error on cross-appeal is overruled.
Plaintiff's fifth assignment of error on cross-appeal contends the trial court erred in making the child support deviation effective December 3, 1998, the date of the court's judgment entry. Plaintiff asserts that because the deviation is premised on the new parenting schedule effective August 25, 1998, it should become effective on that date.
In support, plaintiff noted that when the trial court initially granted defendant child support, the court made the award retroactive to the date defendant's motion was filed. In such circumstances, however, the award is generally held to be effective as of the date the motion was filed. See Brennan v.Brennan (Mar. 12, 1996), Franklin App. No. 95APF10-1288, unreported (1996 Opinions 886), citing Murphy v. Murphy (1984),13 Ohio App.3d 388. By contrast, the order at issue arose as a result of terminating temporary orders for child support and imposing a child support obligation arising out of the divorce granted December 3, 1998. See Colom v. Colom (1979), 58 Ohio St.2d 245. Here, the trial court's final judgment terminated the prior temporary support order. See Caron v. ManFresca-Caron (Nov. 20, 1997), Franklin App. No. 97APF03-438, unreported (1997 Opinions 4768). Moreover, the number of weeks, as well as the amount of deviation, is relatively small. Considering all those factors, we cannot say the trial court abused its discretion in not applying the deviation in child support retroactively to the date the parenting schedule was effective.
Accordingly, plaintiff's fifth assignment of error on cross-appeal is overruled.
Plaintiff's sixth assignment of error on cross-appeal contends the trial court erred (1) in failing to consider that defendant removed furnishings from the home, forcing plaintiff to purchase new furnishings on his return to the marital residence, and (2) in allowing each party to keep the property in their possession.
"A Court of Common Pleas has broad discretion to determine what property division is equitable in a divorce proceeding. * * * A reviewing court will not modify or reverse a property division unless it finds that the trial court abused its discretion in dividing the property as it did. * * * In making a property division, `[t]he goal [of the court] is to reach an equitable result. The method by which the goal is achieved cannot be reduced to a mathematical formula.'" (Citations omitted.)Crosby, supra, at 2404-2405.
Plaintiff testified defendant left the stove, refrigerator, washer, dryer, a chair, a VCR, a couch, and television in the recreation room, but took her bedroom furniture and Taylor's bedroom furniture. While plaintiff presented evidence that he bought a couch, chair, and bunk beds for Taylor, including the cost of the items, plaintiff did not present evidence of the worth of the marital furniture. Absent evidence of the value of the items taken, we cannot conclude plaintiff sustained any prejudice to the degree that the trial court's otherwise equitable division of property is rendered inequitable. Plaintiff's sixth assignment of error on cross-appeal is overruled.
Plaintiff's seventh assignment of error on cross-appeal contends the trial court erred in allocating the tax deduction for Taylor. According to plaintiff, defendant took the income tax deduction for Taylor for both 1996 and 1997, and plaintiff also took the deduction in 1996. Plaintiff asserts that because he is in a higher tax bracket, the tax deduction would result in a greater savings to him, and should be awarded to him for 1996. Finding plaintiff did not provide evidence on the relevant issues, the trial court rejected plaintiff's argument.
Allocation of a tax exemption is in the trial court's discretion. Will v. Will (1996), 113 Ohio App.3d 8, 11. "The allocation of the dependency exemption provided by Section 152(e), Title 26, U.S. Code may be awarded to the noncustodial parent when that allocation would produce a net tax savings for the parents, thereby furthering the best interest of the child. Such savings would occur through allocation to the noncustodial parent only if the noncustodial parent's taxable income falls into a higher tax bracket than the tax bracket of the custodial parent." See Singerv. Dickinson (1992), 63 Ohio St.3d 408, 415. "In determining whether taxes would be saved by allocating the federal tax dependency exemption to the noncustodial parent, a court should review all pertinent factors, including the parents' gross incomes, the exemptions and deductions to which the parents are otherwise entitled, and the relevant federal, state, and local income tax rates." Id. at 416. See, also, Goode v. Goode (Aug. 26, 1993), Franklin App. No. 92AP-1580, unreported (1993 Opinions 3611).
Here, plaintiff requested the exemption for 1996, suggesting that the 1997 exemption be given to defendant. Nonetheless, plaintiff submitted insufficient evidence for 1996 relative to the Singer factors, even though he specifically asked for the exemption for that year. The trial court did not abuse its discretion in refusing to grant plaintiff the 1996 exemption.Hutchison v. Hutchison (May 29, 1998), Greene App. No. 97-CA-40, unreported. Plaintiff's seventh assignment of error on cross-appeal is overruled. Plaintiff's eighth assignment of error on cross-appeal contends the trial court erred in dividing the marital assets because the court treated his $1,900 down payment on the house as marital property. Plaintiff contends he earned the down payment, withdrawn from his 401(K), prior to the parties' marriage and it thus is separate property.
"When dividing property in divorce proceedings, the trial court is required to classify assets as marital or nonmarital and then award each spouse his or her separate, nonmarital property. R.C. 3105.171(B) and (D). An appellate court will not reverse a trial court's property award absent an abuse of discretion. * * * However, a trial court's characterization of property as separate or marital is a finding of fact which is reviewed under a manifest weight of the evidence standard of review. * * * Accordingly, this characterization will not be reversed if it is supported by competent, credible evidence. * * * The party seeking to classify a particular asset as separate properly must prove its traceability by a preponderance of the evidence." (Citations omitted.) Garish v. Garish (Mar. 10, 1998), Franklin App. No. 97APF06-813, unreported (1998 Opinions 452, 455-456).
Generally, marital property is divided equitably, while separate property is awarded to its original owner. R.C.3105.171(C) and (D). Separate property includes all real and personal property acquired by one spouse prior to the date of the marriage. R.C. 3105.171(A)(6)(a)(ii). Because plaintiff earned a portion of his 401(K) pension prior to the marriage, he arguably is entitled to have that portion declared separate property. Plaintiff's 401(K) pension plan, however, is distinguishable from most pension plans in that the pension funds are not payable in the future but have been withdrawn. See Daugherty v. Daugherty
(Feb. 1, 1999), Stark App. No. 98-CA-0075, unreported (holding that premarital contributions into a pension plan partially withdrawn to use as a down payment on the marital house constituted separate property to be deducted prior to division of the marital estate).
While the trial court found plaintiff failed to provide sufficient evidence to establish what portion of the down payment was non-marital, plaintiff disagrees. In particular he asserts that he worked at Service Merchandise from August 22, 1983 to April 1992, and that the parties were married August 29, 1987. Because a portion of his 401(K) accumulated through his work at Service Merchandise prior to his marriage, plaintiff suggests the only reasonable method of determining his separate property in the down payment is to hold four-ninths of the down payment to be separate property, representing the four years plaintiff worked at Service Merchandise prior to his marriage.
Although plaintiff testified the down payment came from funds withdrawn from his retirement fund from Service Merchandise, plaintiff testified he could not remember the total down payment. The record is unclear how plaintiff has now concluded the down payment was $1,900. Moreover, the record contains no evidence of plaintiff's 401(K) plan with Service Merchandise. Thus, the trial court did not err in concluding it lacked sufficient evidence to determine the value of the pension benefits and what portion constituted plaintiff's separate property. See Peck v. Peck
(1994), 96 Ohio App.3d 731. Plaintiff's eighth assignment of error on cross-appeal is overruled.
Having overruled plaintiff's eight assignments of error on cross-appeal, but having sustained defendant's single assignment of error, we affirm in part and reverse in part the judgment of the trial court and remand this matter to the trial court for further proceedings consistent with this opinion.
Judgment affirmed in part and reversed in part; caseremanded.
DESHLER and PETREE, JJ., concur.